**United States District Court**
**Eastern District of Michigan**
**Southern Division**

United States of America,

Plaintiff,

v.

D-1 Braylon Marshall,

Defendant.
_______________________________/

Case No. 25-20869

Honorable Susan K. DeClercq

# Response to Defendant's Motion to Suppress Evidence Discovered during "Inventory Search" of the Jeep Grand Cherokee on October 22, 2025 (ECF No. 82)

Braylon Marshall was arrested with a co-defendant, D-2 Daryl Edwards, in El Paso, Texas, hundreds of miles from where he lives, in a rental car with gold and black tow chains and black clothing, including gloves and a ski mask. (ECF No. 82, PageID.520–22). Marshall moves to suppress the tow chains and clothing, arguing that the inventory search by the FBI that led to the items being removed from the car was pretextual.

But, the car was lawfully impounded and the search was conducted consistent with FBI policy, which requires an inventory search of vehicles

that the FBI takes possession of to protect against claims that items were lost or damaged and to remove any items for "safeguarding or as evidence." (*Id* at PageID.518). And in any event, the FBI had probable cause for the search and the automobile exception authorizes warrantless searches of cars. Marshall's motion should be denied.

## I. Facts

On October 16, 2025, Marshall and his co-defendant were traveling through El Paso, Texas, near the U.S–Mexico border in a Jeep rented by an associate of Marshall.[1] (ECF No. 82, PageID.515). At a border checkpoint, a dog alerted to the presence of contraband in the Jeep. (*Id.*). Border patrol agents then learned that Marshall and his co-defendant had outstanding arrest warrants for crimes related to breaking into an ATM using tow chains and took them into custody. (Gov. Exh. 1 – Report of Inventory Search). Border patrol seized the Jeep because the associate who rented the Jeep was not present, and conducted an inventory search where they noted "misc clothes" and "tow chains."[2] (ECF No. 82, PageID.510).

---

[1] This same associate was the registered owner of the car Marshall drove to Michigan during the September 2024 ATM theft conspiracy.

[2] Marshall has not challenged this search and seizure.

Marshall, his co-defendant, and the Jeep were then transferred to the local sheriff's department and ultimately transferred to the FBI. (Gov. Exh. 1). The FBI took possession of the Jeep on October 20, 2025, when it was towed to the FBI's El Paso field office. (Gov. Exh. 1). FBI agents in El Paso conducted an inventory search on October 22, recording the identifying information for the Jeep, noting the condition of the vehicle, and removing the tow chains and clothing. (*Id.* at PageID.517–18). The FBI then returned the rental car and the personal property in the Jeep to Marshall's associate at Marshall's request on October 23, 2025. (Gov. Exh. 2 – Report of Returned Vehicle)

## II. Legal Standard

The Fourth Amendment generally requires that all searches must be conducted based on probable cause and pursuant to a signed warrant. U.S. Const. amend IV. But there is a well-established exception to the probable cause and warrant requirements for "inventory searches" when police lawfully impound a vehicle. *See Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (explaining why the concept of probable cause and the warrant requirement are not relevant to inventory searches). The defendant has the burden of establishing a constitutional violation while the

government bears the burden of justifying a warrantless search. *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002).

An inventory search is "the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 811 n.1 (1996). Although such searches may not serve solely as a pretext for investigation, "the mere fact that an officer suspects that contraband may be found in a vehicle" will not invalidate the search, *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007), unless the search was done for the "sole purpose" of investigation, *Bertine*, 479 U.S. at 372.

The automobile exception requires probable cause but is otherwise a valid exception to the warrant requirement. *Collins v. Virginia*, 584 U.S. 586, 591 (2018). This exception includes searches of containers within the automobile. *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999). The exception is based on the lesser expectation of privacy found in an automobile and applies even where a car has been impounded. *See Florida v. Meyers*, 466 U.S. 380, 382 (1984) (explaining that the Supreme Court has repeatedly upheld warrantless searches of impounded

vehicles); *see also United States v. Smith*, 510 F.3d 641, 650 (6th Cir. 2007) (rejecting argument that officers must obtain a search warrant when they have control of the car and driver and collecting cases). Probable cause is a "fair probability" that contraband or evidence of a crime will be found in a place based on the totality of the evidence. *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024).

## III. Argument

Marshall concedes that the Jeep was lawfully impounded and thus subject to an initial inventory search. And he doesn't challenge the initial inventory search by border patrol. Instead, he challenges the later search by the FBI when that agency took control of the Jeep, arguing that the search was merely a pretext to conduct further investigation. But the U.S. Supreme Court has repeatedly rejected this focus on an officer's subjective motivations when evaluating Fourth Amendment reasonableness. *See, e.g., Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively,* justify the action.) (cleaned up). Accordingly, Marshall must show that the investigation was the "sole

purpose" for the inventory search. *Bertine*, 479 U.S. at 372.

But the record clearly shows that the FBI agents didn't merely look for contraband—instead, they documented additional information about the vehicle not recorded in the initial inventory, noted the condition of the vehicle, down to noting a "small ding on the driver door," to protect against future claims of damage, and inventoried the contents of the suitcases to protect against claims of lost property.

Even if the search were based solely on the high probability of finding evidence of a crime, the automobile exception applies as well and permits law enforcement with probable cause to search the Jeep without a warrant based on the lesser expectation of privacy in an automobile. The tow chains found during the initial inventory by CBP coupled with the outstanding warrants for crimes committed with tow chains, and the police canine alert, all establish probable cause to search the car.

**a. The FBI's inventory search complied with FBI policy and was not conducted for the sole purpose of investigating the ATM thefts.**

Marshall concedes that the initial border patrol search of the Jeep was lawful. At the time, the border patrol noted the tow chains in the Jeep and clothing but did not remove them from the Jeep. (ECF No. 82,

PageID.510). The border patrol provided a receipt for the tow chains and clothing and sent them along with Marshall to the local sheriff's office, and then to the FBI. Marshall maintains that the FBI was required to rely on border patrol's initial (and rather cursory) search and prohibited by the Fourth Amendment from doing its own inventory. And, he argues, despite knowing the tow chains were evidence of a crime, the FBI was required to give them to Marshall's associate because the border patrol agents who first found the tow chains left them in the Jeep.

But FBI agents would have been violating their own policy had they taken possession of the Jeep without performing an inventory search and removing evidence of a crime. The FBI requires that inventory searches be done when a vehicle comes into their possession to ensure that all contraband is removed, along with any valuables, and to note the condition of the vehicle. (ECF No. 82, PageID.517). Had the agents here refused to do such a search, they would have been violating their employer's policy, risking discipline, and potentially exposing themselves, and ultimately federal taxpayers, to liability for later claims of missing or damaged property. *Whren*, 517 U.S. at 811 n.1 (explaining rationale for inventory searches).

And the inventory search receipt from border patrol didn't contain much of the information that the FBI requires to be collected during its inventory searches. *Compare* (ECF No. 82, PageID.510) *with* (*Id.* at PageID.517–518).

FBI policy also required the agents to remove items of "significant value" or items that are evidence for "safeguarding." Given the obvious evidentiary value of the tow chains and the clothing matching clothing wore during the ATM robberies, the agents would have been violating FBI policy had they simply left these items in the Jeep.

Likewise, Marshall's request for an evidentiary hearing should be denied. His exhibits lay out the FBI's procedure for conducting an inventory searches. (ECF No. 82, PageID.517–18). The form establishes that those procedures were followed. Marshall's only supposed violations of the policy—the fact that the search was done two days after the FBI took possession of the Jeep and the fact that the containers inside the vehicle were searched—do not present serious factual disagreements.

The policy addresses container searches and instructs the agents to locate keys and codes for these items. Thus, the policy clearly authorizes searches of containers. And there is no dispute about the timing of the

search. The government simply maintains that searching the Jeep two days after receiving it, and a day before giving it back to the renter, was not a material violation of the policy.

Marshall concedes that the only case law on this issue has rejected his position. *See United States v. Perez*, 29 F.4th 975 (8th Cir. 2020); *United States v. Williams*, 930 F.3d 44 (2d Cir. 2019). In *Williams*, the court approved of a second inventory search because the police believed there were items of evidence in the car based on the defendant's "curious" behavior, 930 F.3d at 51, and in *Perez* the court approved of an inventory search four days after the initial inventory search because the first search was done in "low light conditions." 29 F.4th at 981–82.

The interest in a second inventory search is, if anything, even stronger here. The first search was conducted by a different agency, border patrol, and by agents with less awareness of the ATM theft case. The FBI was, on the other hand, aware of the facts of the crime, which included using masks, tools, and tow chains to break into an ATM, and thus justified in, at a minimum, removing the tow chains, and in addition, checking that all other items of evidence had been accounted for. Relatedly, the initial search at the border was not conducted

pursuant to FBI policy, because it was not conducted by the FBI.

The tow chains the FBI removed were nearly the same as the chains used in the Livonia ATM theft. And the FBI was aware that the theft was part of a larger, on-going conspiracy involving Marshall and others based in the Houston, Texas area that was unlikely to have simply dissolved in September 2024, since no one was arrested at that time. Thus, the evidentiary value of finding co-conspirators together in a rental car, hundreds of miles from home, with the same tools they'd previously used is undeniable.



***Tow Chains Found after ATM Theft (left) and during Inventory Search (right)***

At best, Marshall's argument establishes that investigation (as opposed to inventorying and collecting evidence) was one motivating

factor for the inventory search. But Supreme Court and Sixth Circuit case law is clear that this is not enough—he must show that the search was done "only for the purpose of investigation." *See United States v. Alexander*, 954 F.3d 910, 916 n.2 (6th Cir. 2020); *United States v. Hockenburry*, 730 F.3d 645, 659 (6th Cir. 2013). Given that the Jeep needed to be returned to the actual renter, and given the important information lacking from the initial inventory search by the border patrol, Marshall cannot establish that investigation was the sole purpose of the search. Marshall's motion should be denied.

**b. The FBI agents had probable cause to search the car and seize the tow chains and clothing, and no warrant was required under the automobile exception.**

But even if Marshall were correct that the sole purpose of the search was simply to recover evidence of a crime, the search would have been proper under the automobile exception to the warrant requirement. The automobile exception is based not just on the "ready mobility" but also the "pervasive regulation of vehicles." *California v. Carney*, 471 U.S. 386, 392 (1985). The Supreme Court has concluded that as a result of this pervasive regulation, no warrant is required to search automobiles where there is probable cause to believe that they contain contraband or

evidence of a crime. *Id.* And the exception applies even where the car is impounded, and the government has time to secure a warrant. *See Maryland v. Dyson*, 527 U.S. 465, 467 (1999); *United States v. Hofstatter*, 8 F.3d 316, 321 (6th Cir. 1993); *United States v. Dowl*, 229 F.Supp.3d 603, 608–09 (E.D. Mich. 2017) (collecting cases and explaining there are "no temporal or numerical limitations on searches under the automobile exception").

Here, Marshall and his co-defendant were charged with an ATM theft where they traveled across the country in a rental car and used tow chains to break open an ATM. And the FBI knew of multiple other investigations, including additional FBI investigations, into similar ATM thefts involving a crew of people from Houston, Texas, and suspected that the scheme was ongoing.

When Marshall and his co-defendant were arrested again in a rental car after a canine alerted to the presence of contraband in their car, with tow chains, hundreds of miles from home, there was probable cause to believe their car would contain evidence of additional ATM thefts. In fact, the evidentiary value of the tow chains themselves is relevant evidence and justified a search. The FBI was also aware of the

clothing the thieves wore, the tools they had used to break into the ATM, and the designer clothing they had purchased with stolen funds. Thus, there was a fair probability that the Jeep and the suitcases inside the Jeep would contain additional evidence of the crimes, which they did.

**c. The good-faith exception applies here to a novel factual scenario, and the Court should not suppress the evidence.**

Excluding evidence obtained in violation of the Fourth Amendment is always a "last resort" due to the "heavy toll" on the judicial system and society at large of "suppress[ing] the truth and set[ting] the criminal loose in the community without punishment." *Davis v. United States*, 564 U.S. 229, 237 (2011). The Supreme Court has long held that the exclusion of evidence is not a "personal right" or a remedy for constitutional wrongs. *Id.* (citing cases). Instead, the exclusion of evidence is only justified to deter future acts of wrongdoing by law enforcement. "[W]hen the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrent value of suppression is diminished, and exclusion cannot pay its way." *Id.* at 238 (cleaned up).

The deterrence value here of suppressing the evidence taken from

the second inventory search is nonexistent. Marshall concedes that this is a "unusual situation" and sites only two cases that have ever addressed a similar factual scenario, both of which approved of a second inventory search on thinner grounds. *See* (ECF No. 82, PageID.506) ("There is little case law out there that discusses this *unusual* situation.") (emphasis added). Nor has Marshall pointed to any policy that would prohibit a second inventory search. Given how rarely the situation comes up and the lack of any guidance whatsoever prohibiting such searches, there is no evidence that the agents acted in a deliberate, reckless, or grossly negligent disregard of the Fourth Amendment. And no credible argument that suppressing the evidence here would have a substantial deterrent effect going forward in light of how rarely the situation arises. Thus, the motion to suppress can be denied based on the good-faith exception alone.

## IV. Conclusion

For these reasons, Marshall's motion to suppress evidence discovered during an inventory search must be denied.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

/s/Stephen Carr

Stephen Carr
Andrew R. Picek
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9721
stephen.carr@usdoj.gov

October 7, 2026

## Certificate of Service

I certify that on Wednesday, October 07, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/*Stephen Carr*
Stephen Carr
Assistant U.S. Attorney
U.S. Attorney's Officer